NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| _____ : | | |
| ACME PLASTICS OF NEW JERSEY, INC., | : : | Civ. Action No. 02-5906 |
| | : | |
| Plaintiff, | : : | |
| v. | : : | **OPINION** |
| INTERNATIONAL FIXTURES LTD, t/a J&F MANUFACTURING, INC., | : : : | |
| Defendant. | : : | May 4, 2007 |
| _____ : | | |

**WIGENTON**, District Judge.

Before the Court is defendant International Fixtures, LTD, *trading as* J&F Manufacturing, Inc.'s ("Defendant" or "J&F") motion for summary judgment as to a breach of contract claim ("Motion") filed by plaintiff Acme Plastics of New Jersey, Inc. ("Plaintiff" or "Acme"). The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). The Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, the Court grants Defendant's Motion.


**Procedural History**

Plaintiff, a New Jersey corporation, is a supplier of plastic, metal, and wood products. (Compl. at 1-2.) Defendant, a New York corporation, manufactures metal products and served as a vendor to Plaintiff. (Compl. at 1,3.) The instant action arises from the business relationship

between the parties, through which Defendant provided Plaintiff with certain metal components that in turn Plaintiff sold to Office Depot. (Compl. at 3.) Plaintiff and Defendant entered into a one-page agreement, dated February 28, 2000, which Plaintiff alleges prohibited Defendant from soliciting or selling, "directly or indirectly" to Office Depot ("Agreement"). *Id.* Plaintiff alleges that Defendant directly sold components to Office Depot as early as September 2001, in breach of the Agreement. (*See* Pl. Br. at 7.) Defendant contends that the Agreement is unenforceable. (*See* Def. Br.)

On December 13, 2002, Plaintiff filed a five-count Complaint against Defendants in this Court alleging the following: 1) breach of contract, 2) book account, 3) breach of implied covenant of good faith and fair dealing, 4) tortious interference with prospective economic advantage, 5) tortious interference with contractual relationship, and 6) unjust enrichment. (*See* Compl.) By Order dated June 6, 2006, then presiding District Judge Katharine S. Hayden allowed Defendant to file and serve a motion for summary judgment with respect to Count 1 of the Complaint for breach of contract in connection with the Agreement between Plaintiff and Defendant. (*See* Hayden June 6, 2006 Order.)

The case was reassigned to District Judge Susan D. Wigenton on July 10, 2006, prior to Defendant's filing of the instant Motion. This Opinion focuses solely on Plaintiff's breach of contract claim.[1]

---

[1]Tortious interference claims and claims involving alleged payments from Defendant to Plaintiff's former salesman, James Gigantelli, will not be addressed. (*See* Pl. Br. at 1-2.) There is a separate state action involving Mr. Gigantelli.

**Legal Standard**

*Summary Judgment*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 318 (1986).

Once the moving party meets the initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). The court may not weigh the evidence and determine the truth of the matter but rather determine whether there is a genuine issue as to a material fact. *Anderson*, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in the light most favorable to the nonmoving party. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991).

Although the parties have raised issues of fact with regard to peripheral matters that relate to Plaintiff's claims of tortious interference, such issues are not material or relevant to the breach of contract claim. As such, this Motion regarding the breach of contract claim is appropriate for summary judgment.

<u>*Breach of Contract*</u>

"The interpretation of a contract is a matter of law for the court." *Atlantic City Racing Ass'n v. Sonic Fin. Corp.*, 90 F. Supp. 2d 497, 506 (D.N.J. 2000).   The essential elements of a cause of action for breach of contract are a valid contract, defective performance by defendant, and resulting damages.  *Coyle v. Englander's*, 199 N.J. Super. 212, 223, 488 A.2d 1083, 1088 (App. Div. 1985). Thus in this instance, if the Agreement is not valid and enforceable, for the purpose of summary judgment, the Court need not further address Plaintiff's allegations of breach of contract.


**Discussion**

Plaintiff argues that summary judgment in Defendant's favor is unwarranted because "the movant failed to disclose many material facts, has taken facts out of context and misapplied the relevant law, and relies upon immaterial facts." (Pl. Rep. Br. at 1.)  The Court has noted this claim and viewed the facts in the light most favorable to Plaintiff.

The parties' arguments as to whether or not the Agreement is valid and enforceable are multi-faceted.  As such, the Court will undergo a multi-layered analysis to decide this issue.  The Court will assess the Agreement first under general contract principals and then analyze consideration requirements and the validity of the noncompetition provision to protect a legitimate interest.


<u>*General Contract Analysis*</u>

The first substantive issue before this Court is whether or not the Agreement constitutes a

valid and enforceable contract under New Jersey law.[2]  If the terms of a contract are clear the court will enforce them as written.  *See Atlantic City Racing Ass'n*, 90 F. Supp. 2d at 506.  The one-page Agreement at issue consists of only two paragraphs, of which the first paragraph sets forth the parties.  The second paragraph merely states the following:  "J&F Manufacturing is an independent contractor that performs work for Acme's customer Office Depot.  J&F Manufacturing agrees that it will not solicit and/or sell products directly or indirectly to Office Depot, Inc." (Compl. Ex. A).  The Agreement was executed by Jagdat Singh ("Singh"), owner and president of Defendant, and Jared Levinson, an officer of Plaintiff.  *Id.*

It is well accepted that "an ambiguous contract is to be construed against the drafter." *Englert v. The Home Depot*, 389 N.J. Super. 44, 58 (App. Div. 2006); *see also Atlantic City Racing Ass'n*, 90 F. Supp. 2d at 506 ("Where ambiguities appear in the contract, they are to be strictly construed against the drafter.").  Lawrence Levinson, the president of Plaintiff, drafted the Agreement at issue.  (*See* L. Levinson Aff., at ¶ 11).  As such, any ambiguities therein must be construed against Plaintiff.

On its face, the Agreement is ambiguous and silent regarding material terms.[3]  When courts determine the extent to which vagueness in an agreement will be tolerated, "[e]ach case, being unique, turns on its facts." *Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank*, 163 N.J. Super. 463, 474 (App. Div. 1978).  Thus, this review requires a discussion of the relevant facts and circumstances surrounding the execution of the Agreement.

---

[2]The application of New Jersey law has not been disputed by the parties and is applicable.

[3]Material terms include subject matter, price, payment terms, quantity, quality, duration, the work to be done. *See* JOHN D. CALAMARI & JOSEPH M. PERILLO, THE LAW OF CONTRACTS, at 50 (4th ed. 1998).

The parties have not presented an underlying contract governing purchases by Plaintiff from Defendant, beyond purchase orders on an "at will" basis.[4]  The parties began doing business together in 1997.  (Pl. Br. at 3.)  In July, 1999, Plaintiff proposed a draft contract to Defendant ("Proposed Draft"). (Lindsay Cert. Ex. C.)  This Proposed Draft included a noncompetition provision that would have restricted Defendant from performing work for "Acme's customers and clients" during the term of the agreement and for three years following the termination of the agreement.  (Def. Br. Ex. 3 at 2.)  Defendant consulted an attorney with regard to the Proposed Draft.  (Pl. Reply Br. at 4.)  Defendant did not sign the Proposed Draft. (Pl. Br. at 4; Def. Br. at 3.)

Plaintiff gave no indication that if Defendant did not sign the Proposed Draft, Plaintiff would no longer do business with Defendant.  (*See* L. Levinson Dep. at 179:23-180:1; 182:6-10.)  In fact, Plaintiff continued to do business with Defendant after the Proposed Draft was rejected. (Def. Br. at 3, 8.)  It was not until February 2000 that the parties executed the "businessman's agreement," the Agreement at issue.  (*See* L. Levinson's Dep. at 163.)[5]

Defendant refers to the Proposed Draft to support the proposition that the parties did not have a meeting of the minds as to the intent and scope of certain terms detailed in the Proposed Draft, and that as such, Plaintiff cannot deem such terms as part of the alleged contract memorialized by the Agreement.  (*See* Def. Br. at 9.)   Thus, the Court must consider what, if any, essential terms are clearly provided in the Agreement.  Where the parties agree on essential terms, and intend to be bound by those terms, there is an enforceable contract.  *Weichert Co. Realtor's v. Ryan*, 128 N.J.

_____

[4]There  was also no contract between Office Depot and Plaintiff; Office Depot's commitment to purchases from Plaintiff was limited to purchase orders. (Def. Statement of Material Fact at ¶ 5.)

[5]The Court notes that the depositions submitted by the parties, including Lawrence Levinson's deposition, are significantly redacted.

427, 435, 608 A.2d 280, 284 (1992). If the parties fail to agree to one or more essential terms, however, it is generally found that there is not an enforceable agreement. *Id.*; *see also Heim v. Shore*, 56 N.J. Super. 62, 72-73, 151 A.2d 556 (App. Div. 1959).

The Supreme Court of New Jersey has determined that "[a] contract arises from offer and acceptance, and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" *Weichert*, 128 N.J. at 435 (quoting *West Caldwell v. Caldwell*, 26 N.J. 9, 24-25, 138 A.2d 402 (1958)). Restatement (Second) Contracts §33(2) describes the term "certainty" as follows: "The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy."

It is well established in New Jersey courts that "enforceability of a contract requires definiteness with respect to the essential terms of that contract." *Baer v. Chase*, 392 F.3d 609, 620 (2004). "An essential characteristic of an enforceable contract is that its obligations be specifically described in order to enable a court or a trier of fact to ascertain what it was the promissor undertook to do." *Malaker*, 163 N.J. Super. at 474 (internal citation omitted). Further, "[a]n agreement so deficient in the specification of its essential terms that the performance by each party cannot be ascertained with reasonable certainty is not a contract, and clearly is not an enforceable one." *Malaker*, 163 N.J. Super. at 474 (citing *Friedman v. Tappan Dev. Corp.*, 22 N.J. 523, 531, 126 A.2d 646 (1956)); *see also Baer*, 392 F.3d at 621.

In the instant matter, Defendant notes numerous instances where the Agreement is not certain. (*See* Def. Br. at 2-4.) For example, 1) the Agreement is silent as to duration and there is no

provision as to termination;[6] 2) it is unclear which products are covered by the Agreement;[7] 3) as further discussed below, it is unclear what, if any, consideration Plaintiff provided; 4) as Defendant points out, "J&F sold products 'indirectly' to Office Depot through Acme, yet the last sentence [of the Agreement] prohibits precisely what J&F was doing." (Def. Br. at 4.); 5) it is unclear how many degrees of separation are contemplated by the term "indirectly" (Def. Br. at 3.); and 6) there is no geographical limitation. *Id.* at 2-4.  In addition, Defendant's scope of performance pursuant to the Agreement is unclear.[8]  Each of these contentions support Defendant's argument that the Agreement was vague and uncertain.

Generally, the law in New Jersey does not favor voiding a contract for vagueness; however, "the court cannot undertake to rewrite a contract 'merely because one might conclude that it [would] have been functionally desirable to draft it differently.'"  *See Atlantic City Racing Ass'n*, 90 F. Supp. 2d at 506 (quotation omitted).  The courts, interpreting a contract, will use gap-fillers and course of dealing to fill in missing or uncertain terms when possible.[9]  "There is a point, however, at which

---

[6]It is also not clear, on the face of the Agreement, whether Defendant would have been prohibited from soliciting or selling to Office Depot once Plaintiff's relationship with Office Depot ended.

[7]Defendant supplied Plaintiff with metal components that Plaintiff often modified, however, Plaintiff also sold Defendant's components "as is", without modification. (Compl. at 6.)

[8]In a letter dated January 12, 2002 Plaintiff informed Defendant that it was a violation of their Agreement for Defendant to accept any purchase orders for any items from Office Depot, "regardless of whether Acme manufactures the items or could subcontract to have the items made for its customer." (Compl. Ex. L at 2.)  This limitation is not specified or clear on the face of the Agreement.

[9] "An offer which appears to be indefinite may be given precision by usage of trade or by course of dealing between the parties. Terms may be supplied by factual implication, and in recurring situations the law often supplies a term in the absence of agreement to the contrary."  Restatement (Second) Contracts §33, Comment.

interpretation becomes alteration." *Baer*, 392 F.3d at 621.[10]  It has often been held that "the court will not make a different or a better contract than the parties themselves have seen fit to enter into." *Washington Const. Co. v. Spinella*, 8 N.J. 212, 217 (1951); *see also In re Community Med. Ctr.*, 623 F.2d 864 (1980).

When missing provisions go to the essence of an agreement, "a court may not insert the probable or reasonable resolution of the situation which would have been provided if the parties had contemplated the existing situation when the agreement was formed." *See Aarvig v. Aarvig*, 248 N.J. Super. 181, 186 (App. Div. 1991) (citing *Malaker*, 163 N.J. Super. at 463).  Although the Court may be able to infer that the duration of the Agreement was "reasonable time," it is not clear what that would be in this situation.  The parties would have contemplated that the Agreement would or could terminate at some point.  At this juncture, the Court could attempt to insert or clarify some of the other terms which remain uncertain; however, the import and multitude of terms that are uncertain render this task beyond the proper role of the Court.  Such deficiencies render the Agreement vague and indefinite.  As the terms of a contract must be reasonably certain for the contract to be enforceable, the Agreement and its terms are not definite enough to be enforceable.


*Consideration*

Consideration is an important element of a contract.  "To be enforceable, a contract must also be accompanied by consideration." *Excelsior Ins. Co. v. Pennsbury Pain Ctr.*, 975 F. Supp. 342, 349

---

[10]Defendant argues that "[t]he restriction contained in the purported two-sentence 'agreement' between Acme and J&F is so vague and indefinite that enforcement would call for the Court to conjure and rewrite the entire contract – including essential terms – a task that the parties themselves could not manage to accomplish." (Def. Br. at 10-11.)

(1996) (citing *Friedman*, 22 N.J. at 533).  In this instance, the parties do not agree that consideration was provided by Plaintiff.  Plaintiff claims that Defendant received "ample consideration through the business generated by this agreement." (Compl. Ex. L at 2.)  Defendant argues that the Agreement does not contemplate any performance by Plaintiff, that Plaintiff did not provide consideration, and that Plaintiff could end its relationship with Defendant at any time. (*See* Def. Br. at 3.)  Notably, Plaintiff did not promise to buy its metal products only from Defendant, nor did Plaintiff indicate it would cease to do business with Defendant if Defendant did not sign the Agreement. (*See* L. Levinson Dep. at 179:23-182:10, 184:18-21.)  Plaintiff had done business with the Defendant for years without such an agreement, and it continued to do business with Defendant for approximately seven months after Defendant refused to sign the detailed Proposed Draft.  The consideration for Defendant to enter into the Agreement, which consists of merely a noncompetition provision, is questionable at best.

*Noncompetition Provision and Plaintiff's Protectable Interest*

Plaintiff alleges that the Agreement was executed to protect its customer relationship with Office Depot. (*See* Pl. Br. at 3.)  Defendant contends that Plaintiff no longer has a protectable interest in its relationship with Office Depot because dealings between Office Depot and Plaintiff were terminated. (Def. Br. at 15.)  However, Defendant's view does not reflect the circumstances at the time in which the Agreement was executed, as demonstrated in the parties' papers. (*See, e.g.,* Pl. Br. at 5.)  Regardless of whether Office Depot subsequently terminated its relationship with Plaintiff, a protectable interest may have existed at the time the Agreement was drafted and executed.  For example, courts have found that in the employment context, "the employer has a patently legitimate

10

interest in . . . protecting his customer relationships." *Whitmyer Bros., Inc. v. Doyle et al.*, 58 N.J. 25, 33 (1971).

Defendant claims that "[s]ince Acme ceased having a protectable interest in the relationship it once had with Office Depot, the restrictive covenant that Acme maintains prohibits J&F from transacting business with Office Depot is not enforceable." (Def. Br. at 25.)  Defendant raises this argument to address whether Plaintiff had a protectable interest as of September 2001;[11] however, September 2001 is not when the relationship between Office Depot and Plaintiff ended if, as documented, Defendant was still servicing Office Depot's previous order. (*See, e.g.,* Pl. Br. at 7.) If Plaintiff's customer relationship with Office Depot continued, Plaintiff still had a legitimate interest to protect.

In addition, Plaintiff alleges that Defendant's actions interfered with Plaintiff's Office Depot account. (Pl. Br. at 2.)  Specifically, Plaintiff claims that "J&F diverted away from Acme the Office Depot business." *Id.*[12]  Thus, the termination of Plaintiff's Office Depot account alone is not a sufficient basis for the assertion that Plaintiff did not have a protectable interest that it sought to protect.[13]  Further, Defendant's claim that Plaintiff lacked a protectable interest after the termination

_____

[11]It is not disputed that Defendant began dealing directly with Office Depot in approximately September or October 2001.  (*See* Def. Reply Statement of Facts at 19; Def. Reply Br. at 9.)

[12]Plaintiff also claims that Defendant intentionally delayed shipments to Plaintiff in late 2001 to injure Plaintiff's relationship with Office Depot. (Pl. Br. at 2.) The Court notes Plaintiff's allegations, however, Defendant's alleged interference with Plaintiff's Office Depot account is not at issue as to the breach of contract claim if the Agreement is not enforceable.

[13]Notably, Defendant asserts that Office Depot did not end its relationship with Plaintiff due to interference by Defendant, but rather because of a misrepresentation by Plaintiff. (Def. Reply Br. at 6.) Defendant claims that Office Depot discovered that Plaintiff had lied when it allegedly represented that it owned its own metal facility and that Office Depot then decided not to give Plaintiff any more metal business (except what Office Depot had previously committed to purchasing). (*See* Def. Reply Statement of Facts at 16.)

11

of Plaintiff's relationship with Office Depot does not undermine the related breach of contract claim.

Plaintiff characterizes the Agreement as a "simple restrictive covenant that seeks to protect Acme's relationship with Office Depot." (Pl. Br. at 24.)   The validity and scope of the noncompetition provision is at issue.  The majority of the case law on noncompetition agreements arises in the employment context.  Plaintiff points out that "J&F's Motion relies on cases pertaining to employee restrictive covenants, rather than agreements between businesses"; however, Plaintiff does not provide cases involving businesses that are not distinguishable from the instant matter.  (Pl. Br. at 2.)

Though noncompetition agreements were at one time void *per se* in New Jersey, the Supreme Court of New Jersey held in *Solari* that such agreements "are enforceable under appropriate circumstances." *Solari Indus., Inc. v. Malady*, 55 N.J. 571, 576 (1970).[14]   The following is an analysis of the reasonableness and validity of the Agreement in the instant matter.

Following *Solari*, in *Davidson Bros. v. D. Katz & Sons, Inc.*, the court articulated factors that should be considered in determining whether a noncompetition provision in a commercial transaction is reasonable and enforceable. 121 N.J. 196, 211-12 (1990).  The factors include the following: 1) intent of the parties when the covenant was executed; 2) consideration (e.g. whether the covenant had an impact on the consideration exchanged when the covenant was originally executed); 3) clarity; 4) notice; 5) reasonableness of scope (e.g. whether covenant was reasonable concerning area, time or duration); 6) restraint on trade (e.g. whether the covenant imposes an

---

[14]The *Solari/Whitmyer* test evolved after the following factors were utilized in the *Whitmyer* case to determine if a covenant is reasonable and will be given effect: 1) covenant protects legitimate interest of the employer; 2) imposes no undue hardship on the employee; and 3) is not injurious to the public. *Whitmyer*, 58 N.J. at 32-33.

unreasonable restraint on trade); 7) whether covenant interferes with the public interest; and 8) changed circumstances (e.g. whether the covenant was reasonable at the time it was enacted but now adversely affects commercial development and public welfare). *Id.*

In the instant action, the noncompetition provision, which comprises the Agreement, does not meet several of the requirements for reasonableness as articulated in *Davidson*. *See* 121 N.J. at 211-12. As previously noted, the intent of the parties is unclear, Plaintiff's consideration is not indicated, the language of the noncompetition provision is vague and the scope of the Agreement is uncertain.

With respect to restraint on trade, another *Davidson* factor, Defendant has specifically alleged that "[t]he bare covenant not only creates an unreasonable restraint on trade, it is against the public policy of New Jersey." (Def. Br. at 25-27.) Plaintiff claims that the Agreement "was not harmful to the public or an illegal restraint on trade." (Pl. Br. at 2.)[15] However, because the noncompetition provision in the Agreement is unclear, the Court cannot determine whether any resulting restraint on trade would be reasonable.

Thus, even though Plaintiff may have had a legitimate interest to protect, the noncompetition provision at issue cannot be deemed to reasonably protect such an interest. The Agreement is unenforceable.[16]

---

[15]Similarly, Plaintiff argues that the Agreement "imposed no undue hardship on J&F, who was able to sell to current and new customers." (Pl. Br. at 2.)

[16]As this decision focuses on the enforceability of the Agreement, the Court does not address issues raised regarding purported deficiencies in notice, nor Defendant's alleged misconduct or defective performance regarding breach of contract.

**Conclusion**

The parties are two commercial entities, relatively sophisticated parties, that should have been able to adequately craft an enforceable contract to clearly reflect their true intent. Having failed to do so, the Court will not craft a new enforceable agreement for them. After reviewing the papers the Court finds that Plaintiff cannot prevail on a claim for breach of contract because the Agreement was not an enforceable contract under New Jersey law.

Defendant's Motion is hereby **GRANTED**.


s/Susan D. Wigenton, U.S.D.J.


Orig:    Clerk
cc:       Judge Arleo
            Parties