NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| ACME PLASTICS OF NEW JERSEY, INC., | : | Civ. Action No. 02-5906 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | OPINION |
| | : | |
| INTERNATIONAL FIXTURES LTD., t/a J&F MANUFACTURING, INC., | : | |
| | : | |
| Defendant. | : | December 5, 2007 |

**WIGENTON**, District Judge.

Before the Court are motions for partial summary judgment filed by both plaintiff Acme Plastic of New Jersey, Inc. ("Plaintiff" or "Acme") and defendant International Fixtures, Ltd. t/a J&F Manufacturing, Inc. ("Defendant" or "J&F"). Both parties filed motions for partial summary judgment on Plaintiff's tortious interference claim (Count IV). In addition to Count IV (tortious interference with prospective economic advantage), Defendant also moved for partial summary judgment as to Plaintiff's Count III (implied covenant of good faith and fair dealing), Count V (tortious interference with contractual relationship - Gigantelli), and Count VI (unjust enrichment).[1]

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the parties are

---

[1] On May 4, 2007, this Court granted J&F's motion for summary judgment and dismissed Plaintiff's Count I for breach of the alleged J&F "contract." Neither of the parties has moved for summary judgment as to Count II, where Plaintiff alleges J&F owes it $30,425.40, in addition to interest and costs. In January 2002, J&F appears to acknowledge that it owed Plaintiff $16,406.60. The Court is not aware of whether Defendant has paid any of this amount; thus, the total amount Defendant owes Plaintiff appears to still be in dispute.

citizens of different states, and the amount in controversy exceeds $75,000.

The Court heard oral argument regarding these motions on November 28, 2007. For the reasons set forth below, the Court: 1) denies Plaintiff's motion for partial summary judgment on Count IV; and 2) denies in part Defendant's motion for partial summary judgment on Counts IV and V, but grants in part as to Defendant's request to dismiss Counts III and VI.

**Legal Standard**

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 318 (1986).

Once the moving party meets the initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). The court may not weigh the evidence and determine the truth of the matter but rather determine whether there is a genuine issue as to a material fact. *Anderson*, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in the light most favorable to the nonmoving party. *Masson v. New*

*Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991).

**Discussion**

The instant action arises from a business relationship between the parties, by which Defendant provided Plaintiff with certain metal components, which in turn Plaintiff sold to Office Depot. (*See* Pl.'s Br. Opp'n at 3.) James Gigantelli ("Gigantelli") was a salesman for Plaintiff. (Pl.'s Br. at 2.) Plaintiff claims that Jaget Singh ("Singh"), owner and President of J&F, made payments to Gigantelli of no less than $51,071.03 during the five-year period of December 1998 to May 2003.[2] Allegedly, a significant portion of this amount was made by J&F for Gigantelli to sway potential customers of Plaintiff, such as CompUSA,[3] and a current customer of Plaintiff, Office Depot,[4] to do business with J&F. (Pl.'s Reply Br. at 3.)

Defendant concedes that it made certain payments to Gigantelli by check without informing his employer, Acme, but Defendant claims such payments were nominal rewards. (Def.'s Mot. Br. at 34.) Plaintiff alleges some of these payments were based on a percentage of purchases Gigantelli caused Acme to make. (Pl.'s Mot. Br. at 2.) Further, Plaintiff claims that Defendant intentionally

---

[2] According to Plaintiff, the "the checks produced revealed that J&F paid Mr. Gigantelli no less than $51,071.03 in 'commission' from December 1998 through May 2003, thus within the period covered by his restrictive covenant with Acme." (Pl.'s Br. Opp'n at 9.) The $51,071.03 amount would include "payments made by J&F during his employment with Acme and the applicable period of the non-competition provisions" of Gigantelli's employment agreement with Acme. (Pl.'s Br. Opp'n at n. 8.)

[3] Singh allegedly directed Gigantelli to offer money to Cathy Sinopoli, a former Office Depot employee who then worked for CompUSA, to gain CompUSA as a customer of J&F. (Pl.'s Br. Opp'n at 11.) This allegedly occurred while Gigantelli was an employee of Acme and knew Acme was interested in his pursuing the CompUSA account on its own behalf. *Id.*

[4] In a separate suit in federal court, Acme engaged in a dispute with Office Depot regarding the 2001 Racetrack order and inventory where the parties troubles allegedly began. Office Depot and Acme settled that matter.

interfered with Acme's relationship with Gigantelli, causing Gigantelli to make sales to other entities which allegedly resulted in damages to Acme.

### A. Tortious Interference Claims (Counts IV and V)

The parties disagree on the following two main issues regarding the tortious interference claims: 1) whether Acme lost Office Depot's business due to their own failures and misrepresentations; and 2) whether payments made to Gigantelli provide evidence to support Plaintiff's claim that Defendant tortiously interfered with Acme's contract with Gigantelli and relationship with Acme's customer Office Depot.[5]

The elements to sustain a claim of tortious interference are the following: 1) plaintiff has a reasonable expectation of economic advantage; 2) defendant has knowledge of such expectation of economic advantage; 3) defendant wrongfully and without justification interfered with plaintiff's reasonable expectation (malice element); 4) in the absence of the wrongful act of defendant, it is probable that plaintiff would have realized its economic advantage or benefit; and 5) plaintiff sustained damages as a result. *See Zippertubing Co. v. Teleflex, Inc.*, 757 F.2d 1401, 1409 (3d Cir. 1985). Plaintiff alleges that it has satisfied each element of this cause of action. Defendant claims Plaintiff cannot satisfy these elements for tortious interference.

Plaintiff asserts that it meets the first element of the tortious interference standard because it had a reasonable expectation of continued business with Office Depot based on past performance and their prior business relationship. (Pl.'s Reply Br. at 5.) *See Central Lewmar L.P. v. Gentilin*,

---

[5] Plaintiff claims J&F's actions with regard to these payments fit the criminal definition of commercial bribery. (Pl.'s Br. Opp'n at 17.)

2005 WL 1308235 (D.N.J. 2005).[6] Plaintiff claims Defendant had knowledge of such expectation in accord with the second prong. Plaintiff also contends that it satisfies the next two elements of this analysis based on J&F's actions and alleged interference. (Pl.'s Br. Opp'n. at 17-20.) Specifically, Plaintiff asserts that Defendant purposefully did not provide Acme with timely deliveries for the Office Depot account. (*See* Pl.'s Mot. Br. at 8.) J&F informed Acme that "the only way to accommodate Acme in delivering Office Depot items within the three to four weeks notice typical to the parties was for Acme to pay a premium of 45% in overtime." *Id.* Further, Plaintiff claims that "J&F intentionally provided poor quality materials to Acme for distribution to Office Depot and made illicit payments, through Gigantelli to Office Depot buyers to obtain Office Depot as a client." (Pl.'s Reply Br. at 6.) As a result of Defendant's alleged actions, Plaintiff seeks to recover for lost profits of $3,734,496, which based on its expert reports, represents a nine-year period ending July 31, 2010.[7] (Def.'s Mot. Br. at 12; Def.'s Mot. Br. Ex. E)

Defendant contends Plaintiff has not satisfied all the elements for a claim of tortious interference for the following reasons: 1) Acme did not have a reasonable expectation that it would continue to do business with Office Depot;[8] 2) J&F was aware that Office Depot would not give

---

[6] Plaintiff relies heavily on this case which is an unpublished opinion of Judge Bissell. *Central Lewmar L.P*, 2005 WL 1308235. The *Central Lewmar* case stated that "the reasonable expectation of economic advantage to the plaintiff does not require a contractual right." *Id.* at 4. Plaintiff had been doing business with Office Depot for four years before Office Depot began purchasing from J&F directly. (Pl.'s Br. Opp'n at 3.)

[7] During discovery, Plaintiff found that over a four-year period, J&F did approximately $10 million in business with Office Depot. (Pl.'s Mot. Br. at 9.)

[8] This assertion is based on the testimony of three former Office Depot employees. Plaintiff claims the testimony upon which Defendant relies is contradictory to the testimony of a former vice president of Office Depot. (*See* Pl. Br. Opp'n at 20-22.)

Acme the business and was within its rights to meet Office Depot's business needs;[9] 3) the malice element is not satisfied as J&F did not act without justification; 4) Acme would not have received Office Depot's business even if J&F did not supply the metal directly; and 5) Acme does not have damages as a result of J&F's actions because Acme lost the Office Depot account on its own due to misrepresenting its metal production facilities. (Def.'s Mot. Br. at 22-31.)[10] Plaintiff claims the mere misrepresentation that they had an in-house metal facility would not have ended their relationship with Office Depot, as Office Depot maintains relationships with suppliers that have subcontractors. (Pl.'s Br. Opp'n at 19-21.)  Thus, based on the parties submissions, the reason Office Depot stopped dealing with Acme appears to be an issue of material fact in dispute.

Notably, Plaintiff also alleges that after Gigantelli resigned from Acme, breaking his contract, he started up his own plastic manufacturing company, MAR Display, in part with funds received from J&F. (Pl.'s Reply Br. at 7.)[11] Gigantelli, also allegedly in partnership with J&F, attempted to take over supplying plastic for mixed media fixtures to Office Depot. (Pl.'s Reply Br. at 7.)[12] Plaintiff claims that J&F used Gigantelli to interfere with Plaintiff's relationship with Office Depot by acquiring confidential information such as pricing and the timing of major Office Depot rollouts.

---

[9] The malice element of tortious interference is not satisfied if it is merely healthy competition, thus there would be no tort injury. *See Lamorte Burns & Co. v. Walters*, 167 N.J. 285 (2001) (discussing trade secret protection).

[10] Notably, as of July 2005 Acme began selling fixtures again to Office Depot. (Pl.'s Br. Opp'n at 14.)

[11] Acme suspended Gigantelli in December 2001 and he resigned in May 2002. (Def.'s Br. at 32.) The parties also disagree on whether Gigantelli resigned or was constructively terminated.

[12] Apparently, there was a separate state suit with Gigantelli. In this matter before the Court, Gigantelli has plead the Fifth several times in his deposition allegedly to avoid exposure to criminal liability, presumably for tax issues.

(Pl.'s Mot. Br. at 2.)  Additionally, Plaintiff alleges J&F intentionally provided Acme with poor quality pieces that they knew would be provided to Office Depot to ensure that Office Depot lost confidence in Acme's ability to deliver the quality of materials desired in a timely manner.  (Pl. Reply Br. at 6.)

Based on the above, there are genuine issues of material fact as to the tortious interference claims, Counts IV and V, which render them inappropriate for summary judgment.  As such, Plaintiff's motion for partial summary judgment is denied in its entirety and Defendant's motion is denied in part.

### B. *Implied Covenant of Good Faith and Fair Dealing Claim (Count III)*

Defendant contends that Plaintiff's claim regarding an implied covenant of good faith and fair dealing (Count III) cannot survive given that this Court previously found that there was not an enforceable contract between J&F and Acme.[13]  (Def.'s Br. at 13-14.)  Plaintiff attempts to save this claim by framing it in the context of Plaintiff's purchase orders and receipt of untimely and nonconforming goods.  (Pl.'s Br. Opp'n at 16-17.)  However, Plaintiff's Complaint is clear that the claims for an implied covenant of good faith and fair dealing were meant to refer to the J&F Agreement,[14] which this Court deemed was not a valid enforceable contract in its Opinion filed May 4, 2007.  (*See* Pl.'s Br. Opp'n at 16-17; Def.'s. Reply Br. at 12-13; Compl.¶¶ 46-50, 65-69.)

Plaintiff acknowledged this defect during oral argument, but requested that the Court

---

[13] The implied covenant is an independent duty and may be breached even where there is no breach of the contract's express terms.  *See Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396 (1997).

[14] Specifically, the Complaint reads: "J&F Agreement contained the implied covenant of good faith and fair dealing." (Compl. ¶ 47.)

7

consider the purchase orders between Acme and J&F when reviewing these claims. (*See* November 28, 2007 Tr. 31-32.) Plaintiff also acknowledges that the purchase orders were not referred to in the Complaint or submitted to support the Complaint. (November 28, 2007 Tr. 32:1-6.) Referring to Fed. R. Civ. P. 15, Plaintiff stated that while they were not seeking to amend the Complaint, by considering the purchase orders "there's no prejudice to J&F because it's the same factual allegations made throughout the case." (November 28, 2007 Tr. 32: 6-10.) The Court disagrees. It would be unfair to construe the Complaint to encompass these specific purchase orders at this late date. Particularly, because Defendant was not put on notice of this possibility until five years after this action commenced, when Plaintiff filed opposition to Defendant's Motion. Plaintiff did not put forth any notice or formal motion to amend or supplement their pleadings and the Court will not interpret the Complaint to state what it does not. (*See generally* Compl.)

For the reasons discussed above, the Court finds that Count III will be dismissed.

### C. *Unjust Enrichment Claim (Count VI)*

Defendant argues that Plaintiff's unjust enrichment claim (Count VI) must also be dismissed because, as a matter of law, a plaintiff must show that it conferred a benefit to defendant, not a third party, in order to succeed on this claim. (Def.'s Mot. Br. at 14-16.) "To assert a claim of unjust enrichment a plaintiff must show that "it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 496 (D.N.J. 1998) (citing *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994)). Thus, "it is the plaintiff's (as opposed to a third party's) conferral of a benefit on defendant which forms the basis

8

of an unjust enrichment claim." *Eli Lilly & Co.*, F. Supp. 2d at 496.

Again, in Plaintiff's opposition papers, Plaintiff attempts to save this claim by framing it in the context of Plaintiff's purchase orders and receipt of untimely and nonconforming goods.[15] (Pl.'s Br. Opp'n at 16-17.) The Court has already addressed why Plaintiff's attempts to informally amend or supplement its Complaint at this point are not appropriate. At oral argument, Plaintiff also referred to *Central Lewmar L.P. v. Gentilin*, to support their position that a claim for unjust enrichment is appropriate in this case. 2005 WL 1308235. However, the *Central Lewmar* case is distinguishable from the present matter. In that case, plaintiff Central Lewmar filed suit against former employee, Gentilin, who started his own business and solicited Central Lewmar's customers for his business while still employed with Central Lewmar. *Id.* at *3-4. In that case, the Court found Gentilin had been unjustly enriched by the profits he gained from his stolen customer "that were above and beyond his compensation from Central Lewmar during his employment with Central Lewmar. Moreover, that profit was at Central Lewmar's expense." *Id.* at *6.

The present matter before the Court is not about a claim of an employee breaching the duty of loyalty. Plaintiff has not named their former employee Gigantelli as a defendant in this federal matter[16] and their claims for unjust enrichment are not for the profits he and his company made from their dealings with Office Depot. Rather, Plaintiff wants the money earned by J&F from J&F's direct dealings with Office Depot. However, absent benefits conferred by Plaintiff with the expectation to profit or be paid for benefits at the time benefits were conferred, Plaintiff's claim for

---

[15] Count VI for unjust enrichment refers to J&F diverting business from Acme, not the nonconforming inventory paid for by Acme. (Compl. ¶¶ 66-69.)

[16] In fact, Plaintiff apparently filed and resolved a separate state suit against Gigantelli.

9

unjust enrichment cannot survive.

For the reasons discussed above, the Court finds that Count VI will be dismissed.

**Conclusion**

The Court denies Plaintiff's Motion because there are issues of material fact in dispute as to the tortious interference with prospective economic advantage claim (Count IV).  In addition, the Court denies in part Defendant's Motion as to Counts IV and V (tortious interference claims) also due to issues of material fact in dispute.  The Court grants in part Defendant's Motion as to Counts III (implied covenant of good faith and fair dealing) and VI (unjust enrichment), and thus the Court will dismiss Counts III and VI.

A trial date of February 5, 2008 has been set to address the remaining Counts II, IV and V.


                                             s/Susan D. Wigenton, U.S.D.J.


Orig:   Clerk
cc:     Judge Arleo
        Parties